ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
OCT 4 2006
CLERK, U.S. DISTRICT COURT
By _____ Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOHN R. OVERTURF, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 3:05-CV-1988-L |
| § | |
| DEUTSCHE BANK AG, et al., § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' Motion to Remand, filed October 20, 2005. After careful consideration of the motion, response, reply, briefs, appendices, supplements, record, and applicable law, the court **grants** Plaintiffs' Motion to Remand.

### I.   Procedural Background

Plaintiffs[1] originally filed this action against Defendants[2] on August 3, 2005, in the 298th Judicial District Court, Dallas County, Texas. Plaintiffs seek a declaratory judgment that contracts Plaintiffs entered into with Defendants are unenforceable due to lack of consideration, or in the alternative, a failure of consideration. Plaintiffs also allege breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, fraud, negligence and negligent misrepresentation. Defendants removed this action to federal court on October 6, 2005. The grounds for removal were that: (1) pursuant to 9 U.S.C. § 205, the subject matter of this action

---

[1] Plaintiffs are John R. Overturf; Julie M. Overturf; 1230 L.C. Two No. 24, LLC; 5290, LTD.; and Overturf Family Enterprises, Inc. (collectively "Plaintiffs").

[2] Defendants are Deutsche Bank AG; Deutsche Bank Securities, Inc. d/b/a Deutsche Bank Brown, a division of Deutsche Bank Securities, Inc.; Craig Brubaker; and Todd Clendening (collectively "Defendants").

relates to arbitration provisions that fall under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 205 ("the Convention"); and (2) there was federal question jurisdiction, as Plaintiffs' claims raise disputed and substantial issues of federal tax law and undecided federal law. In their motion to remand, Plaintiffs contend that: (1) there are no federal issues actually in dispute; (2) the removal was untimely; and (3) 9 U.S.C. § 205 is inapplicable because the arbitration agreement at issue is between two United States citizens, and the applicable exceptions do not apply.

## II. Factual Background

Plaintiffs are two investors and their affiliated entities. In December 2000, Plaintiffs entered into three private contracts with Deutsche Bank AG ("Deutsche Bank") as part of a tax-advantaged investment strategy involving foreign currency digital options. Plaintiffs also opened securities brokerage accounts with Defendant Deutsche Bank Securities, Inc. d/b/a Deutsche Bank Brown ("DB Securities"). The account agreements entered into between Plaintiffs and DB Securities contain a mandatory arbitration clause. The clause provides that the parties agree to arbitrate any controversies which may arise, whether or not based on events occurring prior to the date of the agreement, including any controversy arising out of or relating to: (1) any account that Plaintiffs had with DB Securities; (2) the construction, performance or breach of any agreement Plaintiffs had with DB Securities; or (3) transactions with or through DB Securities. Affidavit of Gayle A. Boone, Attachment ¶19, filed October 6, 2005. It further provides that arbitration shall only be by the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc. *Id.*

In June 2003, the Internal Revenue Service ("IRS") invalidated the tax strategy that Plaintiffs had engaged in, and issued new regulations retroactive to October 1999. Plaintiffs contend that they

**Memorandum Opinion and Order - Page 2**

suffered losses, as Defendants knew or should have known that the tax strategy was improper; and that Defendants failed to advise them accordingly.

### III.    Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *See Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute, they lack the power to adjudicate claims and must dismiss an action if it appears that subject matter jurisdiction is lacking. *See Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *See Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction *sua sponte*").

A federal court has subject matter jurisdiction over cases arising under the Constitution, laws, or treaties of the United States, or in cases where the matter in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists between or among the parties. 28 U.S.C. §§ 1331, 1332. This case was removed to federal court on the basis that it raises a federal question pursuant to 28 U.S.C. § 1331. The latest pronouncement from the high court on subject matter jurisdiction is set forth in *Grable & Sons Metal Prods., Inc., v. Darue Eng'g & Mfg.*, ___ U.S. ___, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). *Grable* makes unequivocally clear that the existence of a cause of action *created* by federal law is not a prerequisite to establish federal question

jurisdiction pursuant to 28 U.S.C. § 1331 or removal jurisdiction pursuant to 28 U.S.C. § 1441(a). *Id.,* 125 S.Ct. at 2366-67. In deciding whether a state law claim invokes federal jurisdiction, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.,* 125 S.Ct. at 2368. Otherwise stated, as "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive," *id.,* a federal court is to decline jurisdiction if the exercise of its jurisdiction is inconsistent "with congressional judgment about the sound division of labor between state and federal courts governing the application of [28 U.S.C.] § 1331." *Id.,* 125 S.Ct. at 2367.

Whether federal question jurisdiction exists over a case removed from state to federal court ordinarily "must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 808 (1986) (citation omitted). In other words, the complaint must "raise[ ] issues of federal law sufficient to support federal question jurisdiction." *Rodriguez v. Pacificare of Tex., Inc.* 980 F.2d 1014, 1017 (5th Cir.1993). Any doubts as to the propriety of the removal should be construed strictly in favor of remand. *Manguno v. Prudential Prop. and Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002). "The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." *St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998). Accordingly, Defendants must establish that this case raises a federal question for the court to exercise subject matter jurisdiction.

IV. **Analysis**

Aside from the issue of the timeliness of Defendants' removal, this case raises identical issues to those in *Hollingshad, et al. v. Deutsche Bank AG, et al.,* Civil Action No. 3:05-2235 (N.D.

Tex.). The issues in *Hollingshad* were: (1) whether Plaintiffs' claims raised a disputed and substantial federal issue; and (2) whether the arbitration clause in the account agreement in that case fell under the Convention. In that case, the court set forth its reasoning and analysis, and remanded the case because it lacked subject matter jurisdiction.

As the fact situation and the underlying substantive issues in this case are the same as those in *Hollingshad*, with minor variances only between the number of claims and number of defendants, the court determines that such differences do not affect the determination of whether this case should be remanded. Rather than reinvent the wheel, and in the interest of judicial economy, the court adopts and incorporates the analysis, reasoning and authority relied on in *Hollingshad*, as if such were repeated herein verbatim. Further, for convenience and reference of the parties and all concerned, the court attaches, as Exhibit A, its opinion and order issued in *Hollingshad*. As the court has determined that it does not have subject matter jurisdiction in this case, the court does not address the timeliness of Defendants' removal.

V.  **Conclusion**

For the reasons expressed herein, and those expressed in *Hollingshad*, the court lacks subject matter jurisdiction over this action. Accordingly, the court **grants** Plaintiffs' Motion to Remand, and, pursuant to 28 U.S.C. § 1447(c), **remands** this case to the 298th Judicial District Court, Dallas County, Texas. The clerk shall effect the remand of this case in accordance with the usual procedure.[3]

---

[3]For the reasons expressed in the *Hollingshad* opinion and order, the court will not assess attorney's fees and costs against Defendants.

**Memorandum Opinion and Order - Page 5**

**It is so ordered** this 4th day of October, 2006.

                                                Sam A. Lindsay  
                                                United States District Judge

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NICHOLAS HOLLINGSHAD, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 3:05-CV-2235-L |
| § | |
| DEUTSCHE BANK AG, et al., § | |
| § | |
| Defendants. § | |

### MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' Motion to Remand, filed January 17, 2006. After careful consideration of the motion, responses, reply, record, and applicable law, the court **grants** Plaintiffs' Motion to Remand.

### I. Procedural Background

Plaintiffs[1] originally filed this action against Defendants on October 13, 2005, in the 116th Judicial District Court, Dallas County, Texas. Plaintiffs seek a declaratory judgment that contracts Plaintiffs entered into with Defendants are unenforceable due to lack of consideration, or in the alternative, a failure of consideration. Plaintiffs also allege breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation and professional malpractice, unjust enrichment, unethical,

---

[1] Plaintiffs are Nicholas Hollingshad, Linda Hollingshad, Hollingshad Investments, LLC ("Hollingshad Plaintiffs"); Peter Regan, PTR Investments, LLC ( "Regan Plaintiffs"); Shawn Doherty, Kelli Doherty, BDH Investments, LLC, BDH Capital Corporation ("Doherty Plaintiffs"); Daniel Sevick, LRRM Investments, LLC ("Sevick Plaintiffs"); William Lorenz, Tomahawk Investments, LLC ("Lorenz Plaintiffs"); John M. Borders, Pamela Borders Individually and as Trustee of the Pam Borders Irrevocable 1997 Trust, Jeffrey Alan Borders as Trustee of the Jeffrey Alan Borders Irrevocable 1997 Trust, John Gregory Borders as Trustee of the John Gregory Borders Irrevocable 1997 Trust, GAB Investments I, LLC, GAB Investments II, LLC ("Borders Plaintiffs"); Allan Kaplan, Kaplan Group Investments, LLC, KGX Investments, LLC ("Kaplan Plaintiffs"); Nathan F. Raciborski, Tammy J. Raciborski, RGX Investments, LLC ("Raciborski Plaintiffs"); Michael Hamilton, Harland M. Braun & Co., Inc., M&H Risk Management, LLC, MHRM X Capital, Inc. ("Hamilton Plaintiffs") (collectively "Plaintiffs").

**Memorandum Opinion and Order - Page 1**



excessive and illegal fees, and civil conspiracy. Defendants Deuthsche Bank AG and Deutsche Bank Securities removed this action to federal court on November 14, 2005. All other Defendants consented to the removal.[2] The grounds for removal were that: (1) there was federal question jurisdiction, pursuant to 28 U.S.C. § 1331, as Plaintiffs' claims raise disputed and substantial issues of federal tax law and undecided federal law; and (2) pursuant to 9 U.S.C. § 205, the subject matter of this action relates to arbitration provisions that fall under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention").

In their motion to remand, Plaintiffs contend that 28 U.S.C. § 1331 does not apply to this case, as this case involves allegations of wrongdoing under state law for the sale of a tax shelter. Plaintiffs further assert that 9 U.S.C. § 205 is inapplicable because this statute is normally predicated on an agreement between a U.S. citizen and a non-U.S. citizen, and that the applicable exceptions do not apply.

## II.  **Factual Background**

Plaintiffs are nine groups of investors and their affiliated entities. At various times in 2001, Plaintiffs opened securities brokerage accounts with Defendant Deutsche Bank Securities, Inc. ("DB Securities") as part of a tax-advantaged investment strategy referred to as an "'MLD" ([that is], foreign currency Market-Linked Deposit)." Plaintiffs' Original Petition ¶¶74, 76. The tax strategies involved certain foreign exchange digital option contracts ("FX Contracts"). The strategy

---

[2] Defendants are Deutsche Bank AG and Deutsche Bank Securities, Inc. d/b/a Deutsche Bank Alex. Brown, a division of Deutsche Bank Securities, Inc., David Parse, Todd Clendening and Craig Brubaker (collectively the "Deutsche Defendants"); Clarion Capital, LLC, Clarion Capital Corporation, Clarion Capital Holdings, LLC, Clarion Capital Partners, LLC, CF Advisors LVI, LLC, CF Advisors LX, LLC, CF Advisors LVIX, LLC, CF Adivsors XLVIII, LLC, CF Advisors XXXIV, LLC and Daniel Brooks, Jr. (Collectively "Clarion" or the "Clarion Defendants"); BDA&K Business Services, Inc., KBA Group, LLP, and Robert G. Kipp (collectively the "BDA Defendants"); Societe Generale; Smith &Frank Group Services, Inc., as the successors-by-merger to Smith, Frank & Partners, L.L.C, Randy Smith, and Chris Fay (collectively the "Smith Frank Defendants") (collectively "Defendants").

**Memorandum Opinion and Order - Page 2**

required Plaintiffs to open individual accounts with DB Securities for the purpose of purchasing long and short digital currency options.[3] The accounts were used to execute various trades with Defendant Deutsche Bank AG. The other Defendants were allegedly involved in the development, marketing, and implementation of the tax strategies.

The account agreements entered into between Plaintiffs and DB Securities contain a mandatory arbitration clause. The clause provides that the parties agree to arbitrate any controversies which may arise, whether or not based on events occurring prior to the date of the agreement, including any controversy arising out of or relating to: (1) any account that Plaintiffs had with DB Securities; (2) the construction, performance or breach of any agreement Plaintiffs had with DB Securities; or (3) transactions with or through DB Securities. Affidavit of Gayle A. Boone,

---

[3]Plaintiffs describe "digital options" as follows:

> An option gives a buyer the right to buy or sell something at a definite price or a definite period of time, regardless of that something's then market price on the open market. That "something" may be stock, bonds, commodities (such as coffee or pork bellies), or intangible market valuations such as the Standard & Poors composite value. Options are said to be "in the money" if the price of the underlying "something" makes exercising the option profitable. Similarly, options are said to be "out of the money" when exercising the option would result in no gain or a loss. . . .
>
> Options may be either "American-style" or "European-style," depending upon whether the option purchaser has the right to exercise the option at any time before expiration ["American-style"] or *only upon* the designated expiration date ["European-style"]. . . .
>
> Digital Options are "digital" in the sense that the investor wins or loses a predetermined amount in full, *but only* if the strike price is met — thus, the option is either on or off, like a digital (binary) 1 or 0. As a result, Digital Options provide an investor with the same payout no matter how far above the strike price the underlying price goes. . . . Digital Options are, in reality, nothing more than wagers that a certain commodity or equity price will be at or beyond (or beneath) a given price on a certain date.

Plaintiffs' Original Petition ¶¶ 64-66 (emphasis in original).

**Memorandum Opinion and Order - Page 3**

Attachment ¶19, filed November 14, 2005. It further provides that arbitration shall only be by the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc. *Id.*

In June 2003, the Internal Revenue Service ("IRS") invalidated the MLD strategy and the transactions thereunder. Plaintiffs contend that they suffered losses as Defendants knew or should have known that the MLD strategy was improper; that Defendants failed to advise them accordingly; and that Defendants' actions were fraudulent.

### III. Analysis

#### A. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *See Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute, they lack the power to adjudicate claims and must dismiss an action if it appears that subject matter jurisdiction is lacking. *See Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *See Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction *sua sponte*").

A federal court has subject matter jurisdiction over cases arising under the Constitution, laws, or treaties of the United States, or in cases where the matter in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists between or among the parties. 28 U.S.C. §§ 1331, 1332. This case was removed to federal court on the basis that it raises a federal

**Memorandum Opinion and Order - Page 4**

question pursuant to 28 U.S.C. § 1331. The latest pronouncement from the high court on subject matter jurisdiction is set forth in *Grable & Sons Metal Prods., Inc., v. Darue Eng'g & Mfg.*, ___U.S. ___, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). *Grable* makes unequivocally clear that the existence of a cause of action *created* by federal law is not a prerequisite to establish federal question jurisdiction pursuant to 28 U.S.C. § 1331 or removal jurisdiction pursuant to 28 U.S.C. § 1441(a). *Id.*, 125 S.Ct. at 2366-67. In deciding whether a state law claim invokes federal jurisdiction, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.*, 125 S.Ct. at 2368. Otherwise stated, as "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive," *id.*, a federal court is to decline jurisdiction if the exercise of its jurisdiction is inconsistent "with congressional judgment about the sound division of labor between state and federal courts governing the application of [28 U.S.C.] § 1331." *Id.*, 125 S.Ct. at 2367.

Whether federal question jurisdiction exists over a case removed from state to federal court ordinarily "must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 808 (1986) (citation omitted). In other words, the complaint must "raise[ ] issues of federal law sufficient to support federal question jurisdiction." *Rodriguez v. Pacificare of Tex., Inc.* 980 F.2d 1014, 1017 (5th Cir.1993). Any doubts as to the propriety of the removal should be construed strictly in favor of remand. *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." *St. Paul Reinsurance Co.*

v. *Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). Accordingly, Defendants must establish that this case raises a federal question for the court to exercise subject matter jurisdiction.

### B.     Federal Issues

Plaintiffs contend that removal of this case under 28 U.S.C. § 1441 was improper because there are no federal issues actually in dispute. They maintain that the issues in this case do not involve federal tax law, as there is no dispute over the tax regulations or benefits applicable to Plaintiffs; but rather the issues are whether "the Defendants are liable to Plaintiffs — under fraud, negligence/malpractice, or other theories — for the loss of those tax benefits and the imposition of penalties." Plaintiffs' Brief at 6. Plaintiffs also assert that even if Defendants could show a contested, substantial federal issue, removal would still be improper "because jurisdiction in this matter would not be consistent with congressional judgment about the sound division of labor between state and federal courts." *Id.* They maintain that while Defendants' failure to properly advised them regrading the IRS's regulation of MLD strategies is an issue in this case, Congress did not envision "opening the flood gates of federal jurisdiction to these state law claims merely because federal regulations and statutes will be examined. These state law causes of action should be decided in state court, which traditionally resolve these types of claims." *Id.* at 7.

Deutsche Bank and DB Securities maintain that Plaintiffs' claims depend upon interpretation of federal tax laws, as no court has ruled on whether the IRS is correct in its interpretation that MLD strategies are improper. They also contend that Plaintiffs' claims depend on their establishing "that the justification for the tax treatment on their tax returns reflected an incorrect interpretation of federal tax law." Deutsche Banks and DB Securities' Response at 2.

**Memorandum Opinion and Order - Page 6**

Plaintiffs assert ten claims against Defendants, including declaratory relief that the FX Contracts are unenforceable due to lack consideration, and unjust enrichment. Plaintiffs' remaining claims are centered on whether Defendants knew or should have known that the MLD strategies were invalid; the representations made regarding the strategies; and Defendants' failure to advise or disclose this information to Plaintiffs. The court therefore determines that Plaintiffs' claims are not centered on whether they are entitled to the tax benefits provided by the MLD strategies; but whether Defendants are liable under state law claims of breach of contract, fraud, negligence/malpractice, and other theories. Plaintiffs do not dispute the validity, construction or effect of the IRS regulation regarding the MLD strategies; or dispute that they are not entitled to the tax benefits of the strategies. The IRS regulation thus is not the central issue, as this case does not rest on the interpretation of the regulation. *See Grable,* 125 S.Ct. 2368 n.3. Stated another way, this case does not arise under federal law, as required by 28 U.S.C. § 1331. This case rests on whether: (1) the FX contracts are enforceable; (2) Defendants breached the contracts and their fiduciary duty by failing to disclose that the MLD strategies and contracts were invalid; (3) Defendants engaged in fraud, negligent misrepresentation and professional malpractice and civil conspiracy by making false representations regarding the tax strategy; (4) Defendants were unjustly enriched; and (5) Plaintiffs are entitled to a declaratory judgment that Defendants are liable to Plaintiffs for tax penalties and fees, and other professional fees and costs incurred by Plaintiffs. The court determines that all of Plaintiffs claims raise issues of state law, and that the fact finder need not determine or interpret the federal tax law regarding the tax strategies in deciding Plaintiffs' claims. Accordingly, the vindication of Plaintiffs' rights under state law does not turn on some construction of the federal tax law. *See Franchise Tax Bd. of State of California v. Construction Laborers*

**Memorandum Opinion and Order - Page 7**

*Vacation Trust for S. California, et al.*, 463 U.S. 1, 9 (1983). The court therefore determines that Defendants have failed to show that Plaintiffs' claims raise a disputed and substantial federal issue.[4]

### C. The Convention, 9 U.S.C. § 201 *et seq.*

Defendants also assert that this court has jurisdiction under the Convention as: (1) the arbitration clause in the account agreements falls under the Convention; (2) the parties had a relationship with Deutsche Bank AG, a foreign party; (3) the parties' relationship envisioned performance abroad; and (4) the parties' commercial relationship had some reasonable relation with Germany and England, foreign states. Plaintiffs dispute these contentions.

As recently articulated, "Congress's purpose and intent, in enacting the Convention Act, was 'to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.'" *Acosta v. Master Maintenance and Const. Inc.*, 452 F.3d 373, 376 (5th Cir. 2006) (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)). Defendants may remove an action from state court to federal court if the subject matter of the action relates to an arbitration agreement that falls under the Convention. 9 U.S.C. § 205. In order for a removal to be proper under 9 U.S.C. § 205, Defendants must show that (1) an arbitration agreement exists which "falls under" the Convention; and (2) the dispute "relates to" the arbitration agreement. *Beiser v. Weyler*, 284 F.3d 665, 666 (5th Cir. 2005). Whether a commercial

---

[4]The court notes that its determination on this issue is in accord with Judge Fitzwater's opinion in *Thomas Cantwell, et al. v. Deutsche Bank Securities, Inc., d/b/a Deuthsche Bank Alex Brown, Inc., et al.*, No. 3:05-CV-1378 ( N.D. Tex. September 21, 2005). Judge Fitzwater thoroughly analyzed the pivotal issue of the court's federal question jurisdiction with respect to facts that mirror this case, and determined that the court lacked subject matter jurisdiction and remanded the case to the state court. *See also Clifton Robinson, et al., v. Deutsche Bank AG, et al.*, No. W-05-CA-270 (W. D. Tex. October 19, 2005).

**Memorandum Opinion and Order - Page 8**

agreement exclusively between United States citizens falls under the agreement is determined by § 202. This section provides, in pertinent part:

> An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention *unless* that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. § 202. (emphasis added). The Fifth Circuit applies the following standard for determining whether the dispute "relates to" an arbitration for purposes of 9 U.S.C. § 205:

> [W]henever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement "relates to" to the plaintiff's suit. Thus, the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense. As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of "relates to."

*Beiser*, 284 F.3d at 669.

Plaintiffs contend that the agreements to arbitrate are between two United States citizens — Plaintiffs and DB Securities— not Deutsche Bank, a German citizen. Plaintiffs further maintain that there is no foreign property here or investment in foreign stock. Alternatively, Plaintiffs contend that if the court determines that removal was proper under the Convention with respect to Deutsche Bank and DB Securities, the court should remand the state law claims against the remaining Defendants, as they involve separate and independent agreements and relationships with these Defendants.

**Memorandum Opinion and Order - Page 9**

Defendants Deutsche Bank AG and DB Securities argue that the account agreements fall under the Convention, as Plaintiffs had a commercial relationship with Deutsche Bank AG, a German corporation, which was interrelated to the account agreements they signed to open the accounts at DB Securities. They point out that the account agreements contain a mandatory arbitration clause, and that the MLD strategy involved the accounts at DB Securities and trades with Deutsche Bank AG. They also contend that the parties' relationship envisioned performance abroad and had a reasonable relation to foreign states, in that the account agreements authorized DB Securities to purchase or sell foreign securities. They assert that the trades were implemented between certain Plaintiffs and Deutsche Bank AG's London Branch. Defendants also contend that, in agreeing to arbitrate with DB Securities, Plaintiffs were also agreeing to arbitrate with Deutsche Bank AG, an affiliate of DB Securities.

This court reviewed opinions in *John Williams, et al. v. Deutsche Bank AG, et al.*, No. 3:05-CV-1395 (N.D. Tex. February 9, 2006); and *Michael Ling, et al. v. Deutsche Bank AG, et al.*, No. 4:05-CV-0345 (E.D. Tex. November 23, 2005). These opinions thoroughly discuss the pivotal issue of whether the arbitration provision in those cases, *identical* to that in this case, falls under the Convention. The court finds these opinions well-reasoned and persuasive in their analysis and supporting authority. In accordance with the analyses articulated in these opinions, the court determines that the account agreements at issue in this case were between the Plaintiffs and DB Securities. It is undisputed that DB Securities is a Delaware corporation, with its principal place of business in New York. Although the accounts were used to execute various trades with Deutsche Bank AG, a German corporation, Deutsche Bank AG was not a party to the agreements. Thus the account agreements were only between citizens of the United States.

**Memorandum Opinion and Order - Page 10**

The court next considers whether the relationship between the parties "involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states," so as to bring it under the Convention. *See* 9 U.S.C. § 202. Plaintiffs maintain that the agreements do not envision performance or enforcement abroad, as there is no foreign property involved nor a relation with a foreign state. They assert that there was no investment in foreign stock, "but merely 'bets' on the price of a given foreign currency at a specified time and place." Plaintiffs' Brief at 15. Plaintiffs also contend that the relationship did not envisage performance abroad, but was merely an agreement between two United States citizens for DB Securities to purchase or sell foreign securities. Plaintiffs point out that "the trade confirmations contain New York contact numbers, specify New York local time for defined points of the transaction, and specify Bankers Trust Company, New York in their payment." *Id.*

The court determines that the account agreements did not involve property located abroad. The transactions took place in the United States and involved United States currency, even though the digital options were for foreign currency. The digital options, however, did not involve the actual transfer of property, or actual investment in foreign stocks or commodities, as they were basically wagers that the price of "something" would be at, beyond, or beneath a given price on a specific date. Thus Plaintiffs were merely betting on the price of a given foreign currency at a specified time and place. Enforcement of the account agreement was through arbitration by the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc., both of which are in the United States. Accordingly, the agreement did not envisage enforcement abroad. The account agreements were with DB Securities. That DB Securities had affiliates in Germany or England, through which DB Securities implemented some of the trades or transactions, does not

**Memorandum Opinion and Order - Page 11**

mean that the Plaintiffs had a relationship with a foreign state. DB Securities' actions occurred in the United States, and Plaintiffs' relationship was with DB Securities. Accordingly, the arbitration agreement does not fall under the Convention, and this court does not have subject matter jurisdiction.

IV.   **Miscellaneous**

Defendants Societe Generale, Smith Frank Defendants, and the Clarion Defendants filed separate responses opposing the motion to remand. Both specifically countered Plaintiffs' alternate request that, if the court denied their motion to remand as to the Deutsche Bank Defendants, then their claims against the non-Deutsche Bank defendants should be remanded. Societe Generale and the Clarion Defendants contend that Plaintiffs' claims against them (non-signatories to the account agreements) are factually intertwined and interdependent with their claims against the Deutsche Bank Defendants, and, therefore, all of the claims should proceed together in the same forum. As the court has determined that this case should be remanded to state court, all of Plaintiffs' claims against all of the Defendants will proceed together in state court.

V.   **Attorney's Fees and Costs**

Plaintiffs have not made a request for attorney's fees and costs in their motion to remand or briefings. Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Fifth Circuit has held that there is no "automatic entitlement to an award of attorney's fees." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000). In applying § 1447(c), the court must consider "whether the defendant had objectively reasonable grounds to believe the removal was legally proper." *Id.* at 293. The court has reviewed the pleadings and

Memorandum Opinion and Order - Page 12

issues in this case and cannot say that Defendants lacked objectively reasonable grounds to remove this case. Accordingly, attorney's fees and costs will not be assessed against Defendants.

## VI. Conclusion

For the reasons stated herein, the court lacks subject matter jurisdiction over this action. Accordingly, the court **grants** Plaintiffs' Motion to Remand, and, pursuant to 28 U.S.C. § 1447(c), **remands** this case to the 116th Judicial District Court, Dallas County, Texas. The clerk shall effect the remand of this case in accordance with the usual procedure.

**It is so ordered** this 3rd day of October 2006.

*/s/ Sam A. Lindsay*
Sam A. Lindsay
United States District Judge